All right, our next case is Black v. West Virginia State Police. Ms. Grieve, is that correct? Yes, that is correct, Your Honor. All right, we'll be glad to hear from you. Thank you. As the Court is aware, we are here today on the appeal of the denial of qualified troopers. These troopers are Cummings, Akers, also referred to as Pardee, she had a name change, Blankenship, and Losh. The Court issued a memorandum opinion without analysis as to the individual defendants. So did you make that argument now, because frankly I haven't been able to find it? Thank you, Your Honor. The argument is set forth in the memorandum brief before the Court, set forth all of the conduct of the individual officers and argued that the conduct alleged by the plaintiff did not rise to the level of a constitutional court as to each. Well, was the argument that you have to look, because your argument here as I understand it is that you have to look at each individual one by one, make an individual determination, but I'm not sure that that was what you argued in the District Court. Thank you, I appreciate that. That was certainly the intent to argue before the District Court. Here there was a civil conspiracy claim that was actually dismissed for us to present anything otherwise, which would assume that that claim survived, which it did not. Additionally, a number of the claims against the individual officers are not against all of the officers. The Court's order fails to delineate those claims as well. And I appreciate that there's, you know, this isn't, you know, a criticism or anything, but given the nature of why, of all those things, and the way the argument's presented, we have this Gilliam case that says, you know, if the qualified immunity issues are presented in the argument form kind of in bulk, that it's not the District Court's obligation to do its own parsing out. How do we get around that one, you know, at least at this point in the case? Thank you, Your Honor. The Court is under an obligation to analyze qualified immunity. We presented the facts with respect to the conduct of each officer. My reading of Gilliam is that it was a bit vaguer than Your Honor references, but that's just a reading. In Gilliam, the Court said that the individual officer's qualified immunity wasn't pled or briefed. We did brief it. Now, we briefed it by presenting the Court's specific conduct as to each individual officer, and we briefed the issue with respect to each cause of action alleged. And, of course, the qualified immunity analysis then required the Court to go forward with a determination as to whether or not the right was clearly established. Does that mean that if you lay out in the facts of your briefings kind of what each person did, and then you go into the argument section on qualified immunity and you refer to them more collectively, dependents, you've done enough? Yes, if the briefing is fully briefed as to the constitutional issue, and there are no facts that support that that individual officer violated that constitutional right or that it wasn't clearly established, the burden then shifts to the plaintiff to come forward. In this case, the plaintiffs failed to reach their burden in establishing that there was a genuine issue of material fact as to each individual defendant and will represent to this the Court's order, whether it's individually or collectively, fails to set forth any evaluation of what the officer's conduct did that violated a clearly established law. The plaintiffs brought this cause of action for what essentially... I thought the District Court said there's just many material facts in dispute, and it depends on who you would believe, Mr. Black and some of his evidence or the other side's evidence, which in that classic case where you can't rule on qualified immunity? Well, that is a classic conclusion as to why one couldn't rule on qualified immunity. In this case, and I do have to note that this Court does have jurisdiction over this appeal and not just the District Court's conclusion that there were genuine issues of material fact, but as in Amici v. Brooks, which I believe was out of this Court in January, this Court held that even where certain facts remain disputed, the Court has jurisdiction to decide the legal question of whether or not those facts are material. Yeah, but I think the way... I think that's right. Obviously, that's our law. The question here seems to be lots of times, and maybe the more precisely correct way to be done is to say not just there's disputes of fact, but to say if I assume the plaintiff's version of those facts is true, I find there's a constitutional violation. And if so, I deny it because I found there's a violation construing the like most favorable to plaintiffs. I grant you that sort of language wasn't used. I think a question, though, is whether it could have been more clear is what the District Court did essentially was to say that under the plaintiff's version of the facts, that did create a constitutional violation. Maybe we can say you should have been more clear, but if you assume the plaintiff's versions of the facts are right, do you deny that there's a constitutional violation? Yes, we do, Your Honor. Can you explain why? Yes, I can. The plaintiff's claims arise out of, irrespective of how they are framed, the plaintiff's claims arise out of the investigation of a murder, a murder of a woman who was alleged to have been a drug addict and known to have been sometimes prostitute. That murder occurred in 2002. It was a dead case, a cold case. In 2007, the Cabell County deputy, and Cabell County is not involved in this case, they had received a phone call from an individual that said that his nephew had been talking about the murder and implicated himself and others. That phone call was made to Greg Bailey, or that Greg Bailey made the phone call to this deputy. The deputy then in turn contacted State Police Investigator Defendant Tony Cummings. I thought the deputy said he couldn't remember that. The deputy did not refute that it occurred. That doesn't create a genuine issue of material fact. I thought the issue of fact there was whether or not, I forget the accusation, and didn't receive it from the deputy. So, isn't it a case of who the trier of fact is going to believe here? Not at this level, Your Honor, because the allegation against the officer, and we can take it as Cummings at this point, is that he's not entitled to immunity because he falsified evidence and or coerced statements. There's no evidence that there was any coercion, and there's no evidence of any fabrication with respect to the source of information from DeMint. There are recordings that were part of the record before the district court that lay out specifically audio statements of Brian DeMint implicating the plaintiff, and the reason we're looking at all of this at all, Your Honor, is... Didn't he recant those at some point? Excuse me? Didn't he recant those? Somebody recanted somewhere along the line. So, he recanted a statement that he made at the detachment. The statements that he made over an audio recording made by nobody from the West Virginia State Police, although somebody was wearing a wire because Truber Cummings had provided that, those were recordings that were made and implicated the plaintiff prior to any questioning by law enforcement of any individual in this investigation of the murder. This is important when the court looks at a probable cause. The probable cause issue arises when we're looking at the, again, when we're looking at the court's order. In order for the court to have denied qualified immunity to Cummings and others, the court would have had to have found that Tony Cummings was not entitled to absolute immunity for his grand jury testimony, and the court, in order to do that, would have had to not only delineate what claim it was that plaintiffs were claiming that was unrelated to the testimony he gave to the grand jury, which led to the indictment of the plaintiff. The testimony of the grand jury though related to physical acts that had occurred, such as coerced confession or fabricated evidence. You're saying that simply appearing before the grand jury to testify about that topic insulates an officer who did all those things? Well, we need to look at what actually occurred and let's look at the the facts as plaintiff alleges them and the undisputed facts. The undisputed facts here are that Brian DeMette was recorded as implicating the plaintiff and that was done prior to anybody being questioned here. It is undisputed that Brian DeMette voluntarily came to the detachment and he was mirandized and he gave statements. He alleges that his quote-unquote confession where he again implicated the plaintiff, but this wasn't the first time, he alleges that that statement was made while he was under the influence. The plaintiff argues that Cummings is not entitled to absolute immunity because the one exception that he had misled the prosecuting attorney or lied to the prosecuting attorney and the thing that they're saying he lied about was whether or not DeMette's statement was fabricated. All of the evidence before the court, the district court, and nothing was contradicted by the plaintiff is that that statement from DeMette was not fabricated. He gave three statements, they were inconsistent. But that's not an absolute witness. So I just have a question about your absolute witness immunity argument which sort of picking up on what Judge Agee said strikes me as way too overbroad because it seems to me, okay, let's say that I'm a corrupt cop and let's say that I do something bad that would subject me to discipline in prosecution, okay, and then I go testify in front of a grand jury about the bad thing. I think we all we agree that I have absolute witness immunity for being prosecuted based on this testimony that I give, but the fact that I later testify about the bad thing I did, truthfully or falsely, doesn't like reach back in time and give me absolute witness immunity for the bad thing I did, right? That's correct. Why isn't that what you're asking us to do? Because the analysis has to go further and look at what is the bad thing. The analysis has to include what conduct is it that was alleged to have been fabricated? What evidence was alleged to have been fabricated? What was the alleged coercion? How was the prosecutor lied to? And the analysis then has to include what claims for that those elements can proceed without the grand jury testimony. In this particular case, Trooper Cummings testified about to the grand jury, not Pardee. I'll note that this court's order said that Trooper Cummings and Pardee testified before the grand jury. That's not the case. It was only Trooper Cummings, but the statement from Justin Black is not a confession of murder. The statement from Justin Black says that he was in the vehicle with other individuals and the victim and that everybody else had left, in a nutshell, left the vehicle, gone off in the woods, and then not everybody came back. So that's what the grand jury heard from Justin Black's statement. Justin Black was indicted by the grand jury. That indictment on its face, if we remove Justin Black's statement, which the court would have to do for the probable cause analysis, and again, which was not done in this order, that the, if you excise the statement of Justin Black, there's still probable cause for the indictment of Justin Black because of his statement. Then with the next analysis, when you look at Brian DeMent's statement, plaintiff's entire argument, I'm almost out of time. Well, you've got some time in the rebuttal. I will reserve that for rebuttal then. All right, thank you very much, Ms. Rickert. All right, good morning, and may it please the court. I'm Julia Rickert on behalf of Appalee Justin Black, and I'm joined today by my colleague, Maria McCar. As Ms. Grieve's argument has showed, this appeal is about facts. I heard no pure issue of law discussed. It was disputing the facts of this case, disputing the facts that the district court concluded a jury could find. The most salient fact that the defendants in this case have refused to is innocent. Mr. Black did not commit this crime. Neither did the Barnett brothers, neither did Brian DeMent, who was a troubled, drug-addled young man, and none of these people committed this crime, and therefore, a lot flows from that. A lot about how these confessions came to be, why innocent people would have said that they committed a crime that they absolutely did not commit, and so for that reason... Well, there are a lot of factual questions. What the court would have to look at is whether there are material factual questions, but at some point in your argument, I'd like you to address the forfeiture arguments, because it would appear that the defendants have forfeited some of the claims they make on appeal. You can do that in whatever order you want. Yes, your honor. At no point did the defendants argue that each individual's conduct did not rise to the level of a constitutional violation viewed in plaintiff's favor. As was discussed already, the district judge was presented with arguments of a collective nature, things along the lines of that this wasn't a confession, for example. That was the lead argument about the coerced confession at summary judgment. This was not a confession. These are not particular individuals. The district court is not required, and it would be completely antithetical to our adversarial process, to hear the words qualified immunity and then construct and refute every possible qualified immunity argument that each individual in the case could have made. That is for counsel to do, and it is not on the plaintiff to do that job either. But you'd agree the opposite is true, right? And I'm not saying this is what happened here, but if the defendant said, look, the Supreme Court has said liability under 1983 is an individual person-by-person thing, and people can only be liable for the things that we did. And so if argument heading one of their motion for summary judgment is, you know, person X is entitled to qualified immunity, and here's why. And oh, by the way, they accuse persons Y and Z of doing all these things, but person X didn't do any of those things, even according to them. You agree that if, counterfactually, a defendant did that, the district judge would have to go defendant-by-defendant? Yes, I agree. And couldn't just say the defendants collectively did bad stuff, right? No, unless the district judge was clear that when saying defendants... I mean things they all did, right? Yeah, I mean things they all did. And in this case, there are many instances where the district judge says defendants and then cites evidence that shows individuals having committed these actions. Can I ask you something about the malicious prosecution claim that I'm just... I mean this sincerely, I'm genuinely... Well, I have a couple lead-up questions that I'm not struggling with, and I have the question I'm struggling with. So you agree, I think, probably, that the existence of probable cause at the time of arrest defeats a malicious prosecution claim as a matter of law. If there was probable cause, it defeats malicious prosecution, right? Yes. Okay. And you agree, I assume, that under a recent decision in English v. Clark, I think it was clear before this, but under English v. Clark, in assessing whether there was probable cause, what we do is we counterfactually excise the bad evidence. We look at only the evidence that was not bad evidence, and if that evidence alone establishes probable cause, the malicious prosecution claim fails as a matter of law, because that's basically what we just held in English v. Clark, right? Okay. So this is the part that I don't understand, and in fairness, I don't understand why the district court doesn't talk about this, and this relates to your jurisdictional... I mean this sincerely, why doesn't the original dement recording, by itself, absolutely establish probable cause as a matter of law? For a few reasons, Your Honor, and this gets into the facts, the facts that are disputed, the facts that, you know, that... Well, but we've got cases on the jurisdictional point. We have cases now, I'm skeptical, we have an embanked decision that says a district court can't basically invoke Johnson by just literally ignoring in its order unambiguously material evidence, and what is what is genuinely baffling to me is why the district court doesn't talk about this original dement recording, because my current view is that that establishes probable cause as a matter of law. I see. So the way that this dement recording that you're talking about came about, and I will say there weren't, you know, there wasn't an extensive argument made by the defendants at summary judgment about this dement recording. Fair enough. That is and very important, but the sequence of events viewed from plaintiff's perspective, which I happen to think is the correct perspective, as you wouldn't be surprised. So your part of this is going to be where he recanted? Well, I think... How does that play into the probable cause determination? Sure, well, to step back just for a moment, the way this recording came about, you defendant Cummings, he, by his account, is contacted by Shidler from another county who says, I have, I've been contacted by a man, this Greg Bailey, he says that his nephew told him two years ago. So this wasn't new information that Mr. Bailey was conveying. His nephew told him two years ago that he was involved in a murder of a woman. He didn't say Deanna Crawford. He was, there was no specifics along those lines. Cummings says that Shidler said, I have a note from Greg Bailey listing these people's names. No one has ever seen this note. Shidler doesn't remember it. Shidler does remember that he did not meet with Bailey personally. So there'd be no way for him to have... But why does this have anything to do with the recording? Sure. So by the time the recording is made, Cummings is in contact with Bailey and had been in contact with Bailey for weeks. He already had his idea about who was, who were the people that would be part of this. Mrs. Cummings, you're saying, had the idea? You said he had an idea and I wasn't sure which person you were referring to. Yes, I'm talking about Cummings had the idea. I mean, if we went back even further, and again, this is all stuff for a jury to hear hopefully in the not too distant future, but when the murder of Deanna the Cummings had actually questioned a number of people, including Mr. Black and others in the community that he considered suspicious or I'm not really sure they'd even polygraphed Justin Black's mother who passed incidentally about whether there was a party at their house, you know, and so Mr. Black was on in the Barnett's were already on Cummings radar. And so there are, these are all great arguments about why it doesn't establish guilt beyond a reasonable doubt. I'm just not sure why this established, that means it doesn't establish probable cause. Probable cause is not that high of a standard. No, it isn't. But, but if, if Cummings knew that the information coming from Mr. DeMent had already been influenced by himself, that he had suggested these names to Greg Bailey prior to this recording being made, then, then Cummings would know that this wasn't, you know, pristine information coming directly from a witness. Also know that there's much reason to doubt it. Brian DeMent told multiple stories. He, as has been discussed, was actually, you know, actively on drugs and he's being prodded by his uncle who for some reason sat on information about a murder for two years. You know, so there's a lot of reason to suspect even that initial recording. And again, you know, that, that was even, even on this appeal, I don't think the arguments that the defendants are making. Can you just, so I understand that basically what happens on the recording is that DeMent says he was there and that he and Black were involved in the murder. That's basically what he says in the recording. And in the Barnett's. How would that be influenced by Cummings? Just literally saying those words and basically nothing else. I was there and this other person was there and we were sort of involved. How was that? What is the theory of how that's influenced even when made by Cummings? So Bailey is making this recording at Cummings' behest. Bailey has been talking to his nephew. And he's tricked his cousin. We're supposed to say as a matter of law, you have to not count that as probable cause because we think that someone might've tricked someone into saying something. I'm not saying that as a matter of law, you should conclude that. I'm saying a jury could not be disputed right now. But when a jury has heard all of the evidence about how Cummings conducted this investigation from the beginning and what kinds of goals he had. Is your argument that Cummings told Bailey his theory of how the murder happened? Bailey told DeMent and DeMent repeated it? I'm not sure I'm following. What's the chain that takes it back to Cummings? Again, this recording was being made because Cummings was working with Bailey. In fact, I think they even made him some kind of, had some kind of agreement that he signed to be an informant. He was acting as Cummings' agent really. I can see where that could be a pretty good cross-examination trial, but I'm not sure in isolation that that solves the probable cause question. Sure. What I'm saying is that a jury could find that the information in DeMent's, in the original recording, did not come from DeMent but was provided to him by Cummings. Now, a jury might not buy that, you know, but the point is there's a dispute of fact on that question. Can I take you to, I have a couple questions about the fabrication issue. Yes. So let me start with the polygraph issue. Are there any cases that you're aware of that say, in general, or that it's clearly established that fabricated evidence that, so when I think about fabricated evidence, I think about fabricated evidence that's used at trial, but my sense is this fake fabricated polygraph was never used at trial. Do you have any cases that say there's a fabrication of evidence claim if the, quote, fabricated evidence is never used against the defendant in a criminal trial? Or before a grand ban or anything like that. It's never, basically it's used to get him to confess, but it's not used at a hearing. I'm not aware of any cases that say that's a fabrication of evidence claim. I agree with you. I don't think that the... And can't we just take judicial notice of the fact that in all these Miranda cases, law enforcement officers lie to suspects like literally all the time about things like polygraphs or, I mean, or the classic example is, you better confess, we found your fingerprints at the scene. Law enforcement officers lie to suspects during interrogations about things like that literally all the time. They do. And has any court ever said that's a fabrication of evidence? No. And I do not think that the fake polygraph result standing alone would constitute fabrication of evidence. There were other pieces of evidence that the district court cited on the fabrication claim, including the report by Cummings that does not mention we fed all of these facts to the suspect. We threatened him and said if he did not... Is your fabricated evidence argument that the fabricated evidence is what compelled Black to sign his statement, make a confession? The statement itself is fabricated evidence. The statement itself is evidence that did not come from Mr. Black originally, but that a statement made by the defendants that he adopted under duress. So that itself is fabricated evidence. But you're not saying the police created a independent document, forged his name to it, and then submitted that? No. I'm saying that they provided him a statement that he agreed to parrot back because of his, because of the, a false statement. What is it? I guess this is... I know we've kind of said this, but it's, I will just confess it strikes me as deeply weird. Why isn't that just a Fifth Amendment violation? Why isn't that a compelled self-incrimination argument? I just don't understand how words that come out of the defendant's mouth are fabricated evidence. They may be compelled. They may violate the Fifth Amendment. They may violate the due process clause. But when I think of fabricated evidence, I'm thinking of something like what Judge Agee said is like, I've manufactured a document. And to be clear, if I forged the defendant's signature on a document, that's fabricated evidence. But I don't understand how feeding information to the defendant that the defendant then says, I mean, maybe let's ask another question. What is at stake about whether that is characterized as a fabricated evidence claim or a compelled statement claim? Because it seems to be much more naturally described as an involuntary or compelled statement claim. Sure. Well, it's both. And the... But what is at stake to the difference of whether it's one or the other? Sure. Well, the difference, I mean, plaintiff should bring the claims the plaintiff has, you know, and so just because he's not going to recover more money because one claim is, you know, is proved and another isn't, you know, doesn't mean you don't bring or two claims, of course. But so it's a compelled confession doesn't have to be false. You can have a coerced confession claim for something that is absolutely true. What makes this a fabrication claim, in addition, is that this is false information. And we contend in the district court found a jury could find that this statement was, in fact, that the defendants knew that this was false. And this comes back to the polygraph question, why I think that the false polygraph actually does have weight and while it may not itself support a fabrication claim, it is evidence that the defendants knew Mr. Black was telling the truth when he made his denials. So is your fabricated polygraph claim that the police just made it up, that there never was a polygraph or that he took the polygraph and they said he failed it, but he didn't. So some kind of polygraph was conducted. There are a jury could find that, by the way, the records of this polygraph are gone. There is nothing to refer to to look at to see whether this was legitimately, you know, it was done according to their policies or what it showed or anything like that. So the possibilities from plaintiff's perspective are this is a total sham polygraph, never intended to get at the truth. And this gets into other facts the jury will hear as well. But, you know, Pack Acres had been admonished in a performance evaluation that she was not getting enough confessions as a polygraph examiner. So either it's a sham polygraph or he passed. You know, either way, they were not seeking the truth. They were not after the truth. What they wanted was for Mr. Black. Well, if there was a polygraph that he passed, that might be Brady material, right? Theoretically, yes. And unfortunately, those records are destroyed. Now, there could be questions about whether the inadmissibility. Sure. It's something that's definitely inadmissible Brady material, right? Yes. But the point is he did not fail a polygraph. And so that shows that they knew his statement was false and that they were therefore fabricating. They know that they gave him the information. They know none of the information came from him. And I see I'm short on time. Can I ask you about the coerced, the coerced? So let's just, let's, I understand you're not giving up your fabricated claim, but can I move to the coerced confession issue? What is your best case for the proposition that the facts and circumstances of this case clearly established that this is a coerced confession? Sure. Well, I think, I do think that Gilliam is a very good case on this point for, you know, looking at. Sure, but that defendant was younger. That defendant had intellectual disabilities. I mean, I, if I want to distinguish Gilliam, it's pretty easy to distinguish Gilliam from the situation. But, but Gilliam itself was applying other case law and saying, you know, past cases have shown that threats such as, you know, we'll let your, we'll let your girlfriend out of jail if you confess, you know, that, that these are the types of threats that are, are coercive and improper. And, and, and then looked at Gilliam and said, and we've got everything here. You know, we've got many different types of coercion in this case, and many of these factors are present. It did not say all of these factors must be present. But if you look at Kyle... Wasn't that person held for six days without a hearing, though? The person? In Ferguson, at Ferguson I'm thinking of. Yes, but that is what the Gilliam court was relying on. But that was a person who was held for six days without a hearing. That's not that close to what we have here. Okay, but that wasn't what the, this court was, the aspect of Ferguson that this court was relying on. But the facts of Gilliam are different and the facts of Ferguson are different, right? Yes, and the facts are always going to be different to some extent. Well, but not different. They're different in a way that seems pretty clearly material to the coercion question. If you look at Kyle against Kansas, a 1942 case, the Supreme Court clearly held, and the other side is not disputed, that telling someone you will be, you will face a criminal consequence if you don't give the statement we want, that that is off limits. And I, you know, I would love to hear from them an argument for how that is okay. But here what we have, according to what the district court said could be found, and what Mr. Black testified to extensively, this was not, as the defendants call it in their reply brief, a veiled reference to parole. This was, give us the statement we want or your parole will be revoked. We will see to it that your parole will be revoked. They were preying on a vulnerability that Mr. Black had, that knew he was getting ready to go to college, that he was putting his life back together after he had made a mistake and had a, you know, gotten into a fight and hurt someone and gone to prison. They knew about his vulnerability. But that's probably, I mean, going through the evidence that the district court cited, there's a general comment about threatened punitive action, and then there's threatened to revoke parole. It seems like the rest of the stuff, I mean, it seems like that's your best hook. I mean, maybe it is enough, but as we know, if coercive tactics happen all the time, a lot of these things would not be enough. And it seems like that's what, that's the main thing you have that really makes it perhaps fit with some of these cases. Well, I would agree. I think that, you know, there is a requirement that you look at these other factors. I mean, he was there for seven hours. It was late at night. He was saying, I'm tired. I want to go home. You know, they had his cell phone and his keys and his wallet, and he was, you know, what do I need to do to go home? And you need to make the statement to go home. And so there's also promise of leniency. So I don't think that we're completely dependent on the parole threat, but I do think that the parole threat on its own would be sufficient. You say, you will be charged otherwise, or you will face this criminal consequence if you don't give us what we want. And that's impermissible. Thank you very much. Thank you. I ask that you affirm the judgment of the district court. All right, Ms. Grieve, you've got some rebuttal time. Thank you, Your Honor. The indisputed record is actually the testimony of the plaintiff himself. And one critical element missing from the court's order were any facts or determination that the will of the plaintiff was overcome. And I believe that Gilliam certainly sets out a number of facts that create a question of fact as to whether or not a particular individual's will could be overcome. Mr. Black testified in response to the alleged threats by Cummings, Mr. Black testified that Cummings made idle threats. So counsel, can I, this is a little bit, I guess the inverse of what Judge Hyten was asking her colleague. I mean, it does seem like we have an alleged compelled confession and that that is the fabricated evidence and that that is the malicious prosecution. So I know this is not completely true. There's some stuff that would be referenced besides that. But that seems to be doing a lot of work and the same work in all causes of action. Now, of course, that happens all the time. The same operative facts can give rise to all sorts of liabilities. So there's nothing inherently wrong with attaching various claims to the same facts. Do you have something that kind of sheds light on whether there's something wrong with doing that? To the extent this confession is also doing the main work at fabrication and at malicious prosecution. What says there's something wrong with that? Well, nothing's wrong with that if the test under each alleged deprivation is followed. And so that does vary with respect to what the claim is. So the Fourth Amendment versus the Fifth Amendment, for instance. There is a slightly different analysis. But I would agree with the court that they all fail if there's no predicate fabrication of evidence. The Fifth Amendment claim requires coercion and it requires that the statement be presented against the plaintiff. The that's where we also then will come all the way back to the grand jury testimony. And we have to look at the actual statement. So Mr. Black's statement puts himself in a vehicle with the other than criminal defendants. The probable cause for the indictment and his conviction was the statement from dement. So when we look at what was it about Justin Black's statement that we can look at to say supports a claim that the officers or officer withheld information from the prosecuting attorney. The answer to that is absolutely nothing. When we look to see whether or not Mr. Black's statement was falsified, there's no evidence of any falsification. He testified that he was, quote unquote, fed facts. Those facts don't even exist in his statement. He didn't implicate himself in the murder in his statement. And none of that was ever used against him. But that's what's being conflated by plaintiff's counsel's argument. Underlying every claim is the voluntariness of Justin Black's statement. And here, I think the court is duly noted that there is absolutely no evidence to demonstrate that that claim, that his statement was not voluntary. He was an adult. He had, he was familiar with the system. He was not under any disability. He was not under arrest. There's comment made about when he was questioned. The undisputed evidence before the court was that Justin Black decided when he was going to be questioned. He came to the detachment at night. The law enforcement officers didn't decide when he was going to be questioned. Counsel, one last thing. Yes. For me at least, one hold I meant to ask earlier. You, I think in your bystander claim, I think that's the only place in your brief you allege point two of qualified immunity that clearly established law issue. And my question is, did you allege below that the question of whether there's a duty to intervene regarding a coerced confession or malicious prosecution is clearly established. Did you argue that below to the district court? So, we argued to the court that none of the conduct rose to the level of any constitutional violation. When the court, in its order, specified, oh, well, when the bystander liability claim, you know, that. So, you didn't argue clearly establishing law? I believe that we did argue that, but I don't. Can you say definitively? I believe that we did. I can't say definitively. I can say that it's part of the appendix. And I can say that we definitively argued that the officers were entitled to qualified immunity because they hadn't violated any clearly established right. All right. Thank you. Thank you very much. Thank you, your honor. We'll come down and recancel and move on to the next case.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., Toby J. Heytens